IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

FOUNDATION OF HUMAN                          Civ. No. 1:20-cv-01652-AA
UNDERSTANDING,

              Plaintiff,                    **OPINION & ORDER**

      v.

TALK RADIO NETWORK, INC.,

              Defendant.
_____
AIKEN, District Judge

      This comes before the Court on a Motion for Partial Summary Judgment and
Motion for Judicial Notice filed by Plaintiff Foundation of Human Understanding
("FHU"), ECF No. 72, and on Motion for Partial Summary Judgment filed by
Defendant Talk Radio Network, Inc. ("TRN"), ECF No. 84. For the reasons set forth
below, Plaintiff's Motion is GRANTED in part and DENIED in part and Defendant's
Motion is DENIED.

## LEGAL STANDARD

      Summary judgment is appropriate if the pleadings, depositions, answers to
interrogatories, affidavits, and admissions on file, if any, show "that there is no
genuine dispute as to any material fact and the [moving party] is entitled to judgment
as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines
the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809

F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## JUDICIAL NOTICE

Plaintiff Foundation of Human Understanding ("FHU") requests that the Court take judicial notice of the records of prior litigation between Mark Masters and FHU. Pahl Decl. Ex. 1-19. ECF No. 73. FHU has raised issues of claim preclusion and federal courts may take judicial notice of documents filed in another case to determine what issues were before the court and actually litigated. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see also Mfr'd Home Cmty., Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005) (taking

"judicial notice of a state court decision and the briefs filed in that court to determine if an issue was raised and decided by the state court for res judicata purposes.").

Here, the materials offered by FHU in Exhibits 1 through 19 of the Pahl Declaration are filings from related litigation in California and Oregon. The Court concludes that these are appropriate subjects for judicial notice and so GRANTS FHU's motion for judicial notice.

## BACKGROUND

### I.    FHU and TRN

The Foundation of Human Understanding was founded by Roy Masters to "promote [his] spiritual ministry," which it does through media platforms, "including radio, web, broadcasting, books, lectures, and seminars." Alan Masters Decl. ¶ 2. ECF No. 74. FHU is a California 501(c)(3) non-profit corporation. Second Mark Masters Decl. ¶ 3. ECF No. 85.[1] "Under Article III of the foundation's original bylaws, Roy Masters served in the role of Founder, and the office of the Founder had sole authority to appoint or remove directors." *Foundation of Human Understanding v. Masters*, 313 Or. App. 119, 121 (2021).

Mark Masters was a member of the FHU Board and vice president of FHU until his removal from the organization in late 2016. Second Mark Masters Decl. ¶ 3.

---

[1] The Court notes that the voluminous Second Mark Masters Declaration, ECF No. 85, is rife with legal conclusions and editorial asides. The Court takes no note of these improper and unhelpful additions and has confined its review of the Second Mark Masters Declaration to its statements of material fact.

Mark Masters asserts that on September 28, 2003, the FHU Board adopted an amendment to the FHU Bylaws under which Mark Masters would become the Successor Founder upon the incapacity or death of the original Founder, Roy Masters (the purported "2003 Amendment").  Mark Masters Decl. ¶¶ 22-23.  ECF No. 81.

In 2004, FHU and Mark Masters signed a comprehensive contract selling TRN to Mark Masters.  Alan Masters Decl. ¶ 10.  Mark Masters is the CEO of TRN.  Mark Masters Decl. ¶ 2.

On September 27, 2016, Roy Masters removed Mark Masters and David Masters from the FHU Board pursuant to FHU's 1984 Bylaws.  Alan Masters Decl. ¶ 14.

In 2017, nearly a year after being removed from the FHU Board, Mark Masters, David Masters, and Michael Lofrano declared themselves to the be sole directors of FHU.  Alan Masters Decl. ¶ 14.  Lofrano sent a letter to then-members of the FHU Board notifying them that they had been removed from the Board and replaced by Lofrano, Mark Masters, and David Masters.  *Id.*  In response, FHU initiated a declaratory judgment action in Josephine County Circuit Court, seeking a declaration that Mark Masters, David Masters, and Lofrano were not members of the FHU Board.  The details of the various lawsuits concerning control of FHU are laid out in more detail below, but for purposes of this chronology it is sufficient to say that FHU prevailed in the Josephine County lawsuit and secured a declaration naming Roy Masters, Wendy Taylor, Charles Williams, Alan Masters, and Dianne Linderman as the lawful members of the FHU Board as well as a declaration that Mark Masters,

David Masters, and Lofrano were not officers or directors of FHU and that they had no right or authority to participate in FHU management or control or to control assets of FHU. This judgment was subsequently affirmed on appeal.

FHU's Bylaws were amended on March 22, 2019 and the Second Amended and Restated Bylaws (the "2019 Bylaws") are the current and operative bylaws of FHU. Alan Masters Decl. ¶ 17. The 2019 Bylaws were unanimously adopted by the FHU Board immediately after FHU prevailed in the Josephine County Circuit Court declaratory action against Mark Masters. *Id.* at ¶ 18.

Under the 2019 Bylaws, Roy Masters was recognized as the Founder of FHU and in that capacity Roy Masters possessed "broad authority over many of the decisions of FHU, including appointment and removal of FHU Board members and officers." Alan Masters Decl. ¶ 19. The 2019 Bylaws provided that Roy Masters would relinquish his authority as Founder if he were to (1) die; (2) resign; (3) become incapacitated; or (4) be appointed by the Board to serve as an Emeritus Director. *Id.* at ¶ 20. An Emeritus Director is not a voting director and does not possess the powers of the Founder. *Id.* at ¶ 22. The 2019 Bylaws provide that upon the Founder's death or resignation, "the position of Founder, as described in these Bylaws, shall cease to exist." *Id.* at ¶ 23.

On August 6, 2019, the FHU Board voted to appoint Roy Masters as the Emeritus Director. Alan Masters ¶ 21. On April 22, 2021, Roy Masters died. *Id.* at ¶ 22.

On July 8, 2021, the Oregon Court of Appeals affirmed the judgment of the Josephine County Circuit Court concerning the composition of the lawful FHU Board.

On September 3, 2021, Mark Masters sent a letter to Alan Masters asserting that Mark Masters was the sole holder of the Founder's Office as the "Successor Founder," and purporting to remove all members of the FHU Board. Alan Masters Decl. ¶ 12; Ex. 10.

## II.    The Central Point Properties

Three parcels of land on 724, 734, and 744 East Pine Street in Central Point, Oregon (collectively, the "Central Point Properties,") were transferred to FHU on March 11, 1998 "by execution and delivery of deeds from lawful sellers." Alan Masters Decl. ¶ 5. FHU immediately recorded the 1998 deed and considered the Central Point Properties to be a "primary asset" of the organization. *Id.* FHU has paid the Jackson County property taxes on the Central Point Properties continuously since 1998 and no other entity has paid property taxes on the Central Point Properties. *Id.* at ¶ 6; Ex. 3.

TRN asserts that the FHU Board unanimously voted to transfer the Central Park Properties to TRN on October 1, 1999. Mark Masters Decl. ¶¶ 4-5. At that point, TRN was a wholly owned subsidiary of FHU. Alan Masters affirms that in October 1999, FHU was contemplating the sale of TRN to a third party, Shanahan. Alan Masters Decl. ¶ 9. Alan Masters asserts that the FHU Board executed a Unanimous Written Consent to authorize the transfer of the Central Point Properties to TRN in anticipation of and conditioned upon the sale of TRN to Shanahan. *Id.*

"However, the Shanahan sale fell through and the consent to action was never finalized or included in the corporate minute book." *Id.* Alan Masters asserts that the transfer of the Central Point Properties to TRN as part of the sale of TRN to Shanahan would have been for meaningful consideration, but "transferring valuable real property from a non-profit like FHU to a for-profit company like TRN for nominal consideration would have been pointless and possibly unlawful." *Id.* Mark Masters asserts that the transfer of the Central Point Properties "was NOT conditioned on any potential joint venture, investment or sale to Shanahan being closed or upon any other preconditions." Mark Masters Decl. ¶ 7.

Mark Masters maintains that the transfer of the Central Point Properties was authorized by the FHU Board and that Mark Masters, who was a member of the Board at the time, executed a bargain and sale deed on October 1, 1999. Mark Masters Decl. ¶ 8. However, Mark Masters "did not see any immediate need to record [the deed] at that time as [he] understood that the conveyance of Central Point [Properties] to OTRN was complete upon the execution and delivery of the deed to OTRN." *Id.* at ¶ 11. Mark Masters then forgot about the deed for 22 years. TRN Resp. to TRO, at 7. ECF No. 35. Mark Masters affirms that he discovered the deed transferring the Central Point Properties from FHU to TRN in his garage after the commencement of this action. Mark Masters Decl. ¶ 12. On March 11, 2021, Mark Masters added dates to the deed and then recorded it with Jackson County. TRN Resp. to TRO, at 8; Mark Masters Decl. ¶ 13.

As noted, TRN was subsequently sold to Mark Masters in 2004. Alan Masters Decl. ¶ 10.

Alan Masters, who was a member of the FHU Board, does not recall signing a consent to action to transfer the Central Point Properties to TRN on October 1, 1999. Alan Masters Decl. ¶ 9.

TRN has acted as a tenant in the Central Point Properties pursuant to a lease with FHU. Alan Masters Decl. ¶ 11; Ex. 14 (records showing payment of rent tor FHU by TRN). TRN ceased to pay rent on the Central Point Properties in May 2013. Second Mark Masters Decl. ¶ 10. TRN's tenancy was terminated on September 17, 2017 for non-payment of rent and TRN was evicted from the Central Point Properties. Alan Masters Decl. ¶ 11.

On March 11, 2021, Mark Masters recorded a deed with Jackson County purporting to transfer the Central Point Properties to TRN. Alan Masters Decl. ¶ 8.

### III.    Promissory Note

On September 2, 2004, TRN executed a "Senior Secured Promissory Note" promising to pay $7,000,000.00 to FHU "together with accrued and unpaid interest thereon, due and payable on the date and in the manner set forth" in the Promissory Note. Second Pahl Decl. Ex. A, at 1. ECF No. 90-1. Subject to meeting a fixed charged ratio, TRN was to make quarterly installments on the Promissory Note beginning on September 30, 2007. *Id.* The Promissory Note had a maturity date of September 2, 2014, at which time TRN was to "pay a single lump sum payment in an amount equal to the then outstanding principal amount, plus accrued and unpaid

interest, and plus costs, expenses and fees, if any, due pursuant to this Note." *Id.* at 2.

The loan accrued interest at 7% per annum through the maturity date and would accrue interest at 10% per annum on overdue payments.  Second Pahl Decl. Ex. A, at 3.

The loan memorialized in the Promissory Note had seven possible "Events of Default": (1) if TRN failed to timely pay any amount due within ten days of receiving notice from FHU; (2) if TRN breached a term of the Promissory Note and did not cure within sixty days of receiving notice from FHU; (3) if TRN went into receivership, filed for bankruptcy, or dissolved; (4) if an involuntary bankruptcy petition was filed against TRN; (5) if TRN defaulted on the debt in favor of paying another creditor such that it would affect FHU's rights under the Promissory Note; (6) if TRN had made any false or misleading representations in inducing Promissory Note; and (7) if "a material adverse change occurs in [TRN]'s financial condition."  Second Pahl Decl. Ex. A, at 5.

The Promissory Note provided that, in the case of bankruptcy, the debt would be immediately due and payable.  Second Pahl Decl. Ex. A, at 5.  In the event of any of the other "Events of Default," FHU "at any time thereafter may at its option accelerate the maturity of the indebtedness evidenced by this Note without notice of any kind." *Id.*  "No failure on the part of [FHU] to exercise, and no delay in exercising, and no course of dealing with respect to, any right or remedy under this Note or Pledge Agreement shall operate as a waiver thereof; nor shall any single or partial

exercise by [FHU] of any right or remedy hereunder or under the Pledge Agreement preclude any other or further exercise thereof or any the exercise of any other right or remedy." *Id.* at 6.

FHU alleges that that TRN "made regular payments to FHU of interest and of principal on the [Promissory Note] between October 2004 and May 2013 but made no payments after May 2013. Second Am. Compl. ("SAC") ¶ 14. ECF No. 65-1. FHU brought the present case to collect on the Promissory Note on August 20, 2020 in Josephine County Circuit Court and the action was subsequently removed to this Court.

## IV.    Prior Litigation

There have been a number of prior lawsuits between FHU and Mark Masters concerning ownership or control of FHU and the composition of the FHU Board. Many of these suits overlap in time and subject matter, making a clear chronological recitation impossible.

### A. The 2017 California State Court Case

In October 2017, David Masters filed a lawsuit against FHU in California state court alleging that he, Mark Masters, and Lofrano were the three "true" directors of FHU and seeking a declaration from the court confirming as much. Pahl Decl. Ex. 1, at 7. David Masters also sought an order from the California state court forbidding FHU from interfering with TRN's tenancy in the Central Point Properties, which the complaint refers to as "the Rented Facilities." *Id.* at 8. In February 2019, Roy Masters and Alan Masters made a special appearance to contest personal jurisdiction

of the California state court and moved to quash service of summons.  Pahl Decl. Ex. 2, at 1.  In March 2019, the California state court granted the motion to quash service of summons on Alan and Roy Masters.  *Id.* at 11.

### B. The Josephine County Circuit Court Case

In October 2017, FHU filed suit against Mark Masters, David Masters, and Lofrano in the circuit court of Josephine County, Oregon.  Pahl Decl. Ex. 3.  In the Oregon circuit court action, FHU alleged that it had five directors—Roy Masters, Wendy Taylor, Charles Williams, Alan Masters, and Dianne Linderman—and sought a declaration that those five individuals were the "true and lawful board of directors" for FHU and that Mark Masters, David Masters, and Michael Lofrano "have no lawful right or authority to participate in [FHU]'s management or control or to control any assets or records of [FHU]."  *Id.* at 5.  FHU also sought an injunction forbidding Mark Masters, David Masters, or Michael Lofrano from holding themselves out as directors of FHU and restraining them from attempting to seize control of FHU or FHU's records or assets.  *Id.*  In their answer, the defendants sought an order removing the then-serving FHU Board, a declaration as to FHU's officers, and the dissolution of FHU.  Pahl Decl. Ex. 4, at 11.

In July 2018, FHU sought summary judgment in the Josephine County action seeking a judgment that, as a matter of law, the FHU Board was Roy Masters, Charles Williams, Alan Masters, Dianne Linderman, Wendy Taylor, and Connie Derek.  Pahl Decl. Ex. 5, at 1-17.  In opposing the motion for summary judgment, Mark Masters asserted that Roy Masters was incapacitated and that, by operation of

the purported 2003 Amendment to the FHU Bylaws, Mark Masters was the Successor Founder of FHU.  Pahl Decl. Ex. 9, at 1-3.

In granting FHU's motion for summary judgment, the Josephine County Circuit Court issued a written ruling on March 21, 2019, in which it held that Roy Masters had properly removed both Mark Masters and David Masters from the FHU Board in September 2016.  Pahl Decl. Ex. 11, at 1.  The court noted that it was not necessary to resolve the authenticity of the purported 2003 Amendment to the FHU Bylaws but observed that it "view[ed] the validity of the document with a great deal of skepticism" and found the "timing of its appearance as well as its apparent absence from any official [FHU] records are highly suspicious." *Id.* at 2.

In the general judgment issued on May 2, 2019, the Josephine County Circuit Court ruled that "Roy Masters, Charles Williams, Alan Masters, Wendy Taylor, and Connie Derek are declared to be the true and lawful board of directors of the Foundation for Human Understanding."  Pahl. Decl. Ex. 12, at 2.

### C. The Oregon Court of Appeals Decision

Mark Masters, David Masters, and Lofrano appealed the decision of the Josephine County Circuit Court to the Oregon Court of Appeals.  Pahl Decl. Ex. 19. In their appeal, Mark Masters, David Masters, and Lofrano argued that the circuit court had erred by granting summary judgment when there were questions of fact as to when Roy Masters became incapacitated and "whether the 2003 amendment to the FHU bylaws is a valid document."  *Id.* at 6.

On July 8, 2021, the Oregon Court of Appeals affirmed the Josephine County Circuit Court's ruling in *Foundation of Human Understanding v. Masters*, 313 Or. App. 119 (2021). In reaching its decision, the Oregon Court of Appeals held that (1) Mark Masters had been lawfully removed from the FHU Board in September 2016; and (2) even assuming that the purported 2003 Amendment is valid, Mark Masters' 2017 attempt to remove Roy Masters from the FHU Board was invalid because Mark Masters did not attempt to do so as the "Successor Founder," but as a member of the FHU Board. *Id.* at 124-25. The court held that, "given the evidence in the record at the time that the trial court rendered its decision, Mark [Masters] did not establish a triable issue of fact as to the composition of FHU's Board of Directors." *Id.* at 126.

### D. Bankruptcy Filings

On November 14, 2017, David Masters attempted to file bankruptcy on behalf of FHU in the federal bankruptcy court of the Eastern District of California, purporting to the be the president of FHU, with Mark Masters and Lofrano identified as officers of FHU. Pahl Decl. Ex. 13, at 6; Ex. 14, at 3.

FHU, acting through Alan Masters and Roy Masters, filed a motion to dismiss the bankruptcy case, asserting that it was filed "by persons without authority to act on behalf of [FHU]." Pahl Decl. Ex. 14, at 1. The motion was opposed by David Masters, Mark Masters, and Lofrano. *Id.* The bankruptcy court dismissed the petition, noting the existence of concurrent state court litigation in Oregon and California and observed that the timing of the bankruptcy petition "suggests an improper purpose for this filing," which was "corroborated by the absence of pressing

debt or reorganization issues." *Id.* at 4. The bankruptcy court also observed that questions of corporate governance for FHU would be properly resolved in state court, not in bankruptcy court. *Id.*

Even absent the then-ongoing dispute over control of FHU, the bankruptcy court held that there was sufficient prima facie evidence negating the authority of David Masters, Mark Masters, and Lofrano to act on behalf of FHU, noting that David Masters and Mark Masters had been removed from the FHU Board by Roy Masters in September 2016. Pahl Decl. Ex. 14, at 4. The court also noted that the FHU Board had no authority to remove Roy Masters as Founder and so the acts of the "board" comprised of David Masters, Mark Masters, and Lofrano purporting to do so were without authority. *Id.* at 6.

### E.  The 2019 California State Court Case

In August 2019, Mark Masters brought yet another action against FHU in California state court, seeking a declaration that the purported 2003 Amendment to the FHU bylaws was valid and operative and that Mark Masters now held the office of Successor Founder of FHU. Pahl Decl. Ex. 17.   In that complaint, Mark Masters alleged that Roy Masters had been declared incapacitated on October 9, 2018. *Id.* at 2.

On November 19, 2019, the California state court granted a motion for sanctions against Mark Masters and his attorneys. Pahl Decl. Ex. 18. In granting the motion, the California state court found that Mark Masters' claims "are clearly barred by res judicata," and that "[t]he question as to whether [Mark Masters] has

authority to act as an officer of FHU, and whether the current directors of FHU are vested with their authority was precisely at issue in the Oregon Action." *Id.* at 3. "Although Plaintiff argues that this lawsuit does not seek a declaration as to which individuals qualify as FHU's directors, but rather a determination of the effect of 2003 Document on his and other directors' authority under the FHU bylaws, this is a distinction without a difference," because "[b]oth cases address the authority of [Mark Masters] and other parties to act as officers and directors of FHU." *Id.*

The California state court was also unpersuaded by Mark Masters' argument that res judicata did not apply because the Oregon state court decision did not address the purported 2003 Amendment to the FHU Bylaws, noting that the circuit court decision specifically referenced the 2003 Amendment, thereby demonstrating that the document was clearly raised in that action. Pahl Decl. Ex. 18, at 3-4. In addition, the court noted that "res judicata precludes litigation of issues that *could have been* litigated in the first action," and found that "[t]he question of FHU's corporate structure and the applicability of FHU's Bylaws thereto, if not already litigated in the Oregon Action, clearly could have been litigated, as the Oregon Action directly addressed those issues." *Id.* at 4 (emphasis in original).

The court concluded that the 2019 California state court action was "frivolous and totally and completely without merit." Pahl Decl. Ex. 18, at 4. The court dismissed the action with prejudice and Mark Masters and his attorneys were required to pay $19,736.50 in sanctions for filing a frivolous lawsuit. *Id.*

# DISCUSSION

FHU's Second Amended Complaint ("SAC") brings claims (i) for judgment against TRN for the Promissory Note (Claim 1); (ii) for judgment against TRN on a 2010 line of credit (Claim 2); (iii) for TRN's unpaid rent on the Central Point Properties (Claim 3); (iv) for declaratory relief concerning ownership of the Central Point Properties (Claim 4); (v) for ownership of the Central Point Properties through adverse possession (Claim 5); (vi) for declaratory relief concerning control of FHU (Claim 6); and (vii) for injunctive relief against Mark Masters in the form of a vexatious litigant order.

FHU moves for summary judgment on Claims 4, 5, and 6 which concern, respectively, the ownership of the Central Point Properties and control of FHU itself. In its motion for summary judgment, TRN (1) seeks dismissal of FHU's claims for unpaid debts based on the Promissory Note; (2) confirmation of its ownership of the Central Point Properties; and (3) a declaration that the current FHU Board is not legitimate because Mark Masters is the Successor Founder of FHU.

## I.    Control of FHU

FHU's sixth claim seeks a declaration of "the current rights, obligations, and status of all parties to this litigation" and specifically a declaration that (1) the 2019 Bylaws are valid; (2) that the legitimate FHU Board is Alan Masters, Charles Williams, Connie Derek, Dianne Linderman, and Wendy Taylor; (3) that all claims of authority over the FHU Board relying on the office of Founder are null and void; and that all claims of authority over FHU asserted by Mark Masters in any capacity,

"including as a board member, an officer, or the Founder" are null and void.  SAC ¶ 108.

TRN argues that there is a triable issue of fact as to whether the purported 2003 Amendment to the FHU Bylaws is a forgery, contending that the document is both legitimate and valid.  This argument misses the mark, however, because even if the Court were to assume both that the purported 2003 Amendment to the FHU Bylaws was legitimate and that Mark Masters *could* have occupied the position of successor Founder upon the incapacity or death of Roy Masters, the purported 2003 Amendment was superseded by the enactment of the 2019 Bylaws.  Whatever might have been permissible under the purported 2003 Amendment became irrelevant upon the enactment of the 2019 Bylaws, which redefined the position of the Founder and eliminated the position entirely upon the death of Roy Masters.  Alan Masters Decl. Ex. 12.  The 2019 Bylaws were enacted by the Founder, Roy Masters, and the other lawful members of the FHU Board, as declared by the Josephine County Circuit Court.  As such, when Roy Masters died, the office of Founder ceased to exist.  *Id.* at 2 ("Upon the Founders death, or resignation as a director, the position of Founder, as described in these Bylaws, shall cease to exist.").

TRN argues that there are material questions of fact concerning the validity of the 2019 Bylaws because TRN's handwriting expert was unable to form an objective opinion as to the validity of Roy Master's signature on the 2019 Bylaws.  Cauble Decl. Ex. A, at 55.  ECF No. 80.  This is insufficient to create a genuine dispute of material fact.  *See Anderson*, 477 U.S. at 249-50 (holding that summary judgment may be

granted if the proffered evidence is "merely colorable" or if it is "not significantly probative."). By contrast, FHU has offered a sworn declaration by a participating member of the FHU Board that the 2019 Bylaws were "unanimously adopted" following the Josephine County Circuit Court's declaration concerning the membership of the true FHU Board. Alan Masters Decl. ¶¶ 17-18. The Court concludes that there is no triable issue of fact with respect to the validity of the 2019 Bylaws and that the operation of those Bylaws is entirely dispositive of Mark Master's claim to control of FHU because they eliminate the position he seeks to claim. The Court need not, therefore, reach the question of whether TRN's claims concerning Mark Master's control over FHU are barred by claim preclusion.[2]

In sum, the Court concludes that FHU is entitled to declaratory judgment on the composition of the lawful FHU Board and on Mark Master's claimed right to control FHU. FHU's motion is GRANTED and TRN's cross-motion is DENIED as to that claim.

## II. Ownership of the Central Point Properties

FHU's fourth claim seeks a declaration that Mark Master's recordation of the 1999 deed purporting to transfer the Central Point Properties to TRN is null and void and that TRN has no legitimate claim to ownership of the Central Point Properties due to the expiration of the statute of limitations. FHU's fifth claim seeks, in the

---

[2] The Court notes, however, that in 2019 the California state court reached an eloquent and forceful conclusion on this issue when it sanctioned Mark Masters and his attorneys for advancing a frivolous claim to control of FHU after the matter was disposed of by the Josephine County Circuit Court.

alternative, a declaration that FHU possess a fee simple interest in the Central Point Properties through adverse possession.

### A. Defective Recording of the Deed

As noted, Mark Masters asserts that, while searching his garage, he discovered an undated deed from 1999 purporting to convey the Central Point Properties from FHU to TRN. In 1999, FHU owned TRN. FHU asserts that any transfer of the Central Point Properties to TRN was conditioned on a planned sale of the properties to a third party, Shanahan. FHU maintains, and TRN disputes, that when the planned sale fell through, the transfer of the properties was cancelled. The deed Mark Masters discovered in his garage was undated and improperly notarized, but Mark Masters added a date to the signature line and recorded the deed on March 21, 2021.

On October 1, 1999, the FHU Board issued a unanimous written consent finding that it was in the interests of FHU to transfer the Central Point Properties to TRN, which was at that time a "wholly owned subsidiary" of FHU "for the purpose of facilitating certain future transactions involving TRN." Pahl Decl. Ex. 20, at 1. The written consent is accompanied by a bargain and sale deed transferring the Central Point Properties from FHU to TRN. The deed is signed by Mark Masters, who was vice president of FHU at the time, but the deed was undated. *Id.* at 2. The deed bears a notary block with the name of the notary, but the notary's signature is likewise undated. *Id.*

ORS 93.480 provides: "Every conveyance acknowledged, proved or certified in the manner prescribed by law by any of the authorized officers may be read in evidence without further proof thereof and is entitled to be recorded in the county where the land is situated." With respect to the proper certification of a conveyance, ORS 194.280 provides that a "notarial act must be evidenced by a certificate," which must "[b]e signed and dated by the notarial officer." ORS 194.280(1)(a).

In *High v. Davis*, 283 Or. 315 (1978), the Oregon Supreme Court, citing ORS 93.480, held that a party could not be charged with record notice because the documents in question "were not properly acknowledged before recordation." *Id.* at 333. Although "acknowledgement is not essential to the validity of a deed as between the parties; its purpose is to entitle the deed to be recorded (ORS 93.480) and a record of a deed bearing a false acknowledgement should be stricken." *Houck v. Darling*, 238 Or. 484, 486 (1964) (internal citations omitted).

In assessing a Kansas statute that was substantially similar to the Oregon recording statutes, Kan. Stat. Ann. § 53-508 (1984), a federal bankruptcy court concluded that "the inclusion of the date of a notarial act is a requisite element of that act," and that a certificate of acknowledgement of a mortgage that lacked a date for its notary certification was "patently defective and incomplete." *In re Andres*, 382 B.R. 805, 811-12 (Bankr. D. Kan. 2008). The improperly notarized mortgage "should not have been recorded and, as a matter of law, was not notice to the world of [the mortgagor's] interest in this real property." *Id.* at 812. In another case involving a missing notary signature date, a bankruptcy court in Georgia concluded that "courts

tend to strictly hold notaries public to whatever duties are required by statute." *In re Simpson*, 544 B.R. 913, 920 (Bankr. N.D. Ga. 2016).

Considering the plain language of the statute, the available Oregon state court caselaw, and the persuasive authority derived from other states, the Court concludes that the recording of the deed purporting to transfer the Central Point Properties from FHU to TRN is defective and that FHU is entitled to a declaration to that effect. FHU's Motion is therefore GRANTED with respect to the recording of the 1999 deed purporting to transfer the Central Point Properties to TRN.

FHU's fourth claim also seeks a declaration that TRN's claim to own the Central Point Properties is barred by the statute of limitations, but TRN has not advanced any such counterclaim.[3] The merits of that hypothetical claim, including when the claim accrued are not presently before this Court. The Court therefore DENIES FHU's fourth claim to the extent that it seeks a declaration that an un-pled counterclaim is untimely.

## B. Adverse Possession

FHU asserts that, even if the purported 1999 deed actually conferred title to the Central Point Properties on TRN, then FHU has reacquired title by adverse possession.

---

[3] In its Answer, ECF No. 71, TRN denies that FHU owned the Central Point Properties and asserts that it is the true owner of the properties, Ans. ¶¶ 33-40, 42, but does not seek to lay claim to the properties in its counterclaims. Rather, TRN has advanced counterclaims for accounting; breach of contract; fraud; "tortious conduct,"; for money had and received; and for tortious interference with contract. ECF No. 71.

"In Oregon, adverse possession is governed by both common-law and statutory principles." *Case v. Burton*, 250 Or. App. 14, 22 (2012). "To succeed on a claim of common-law adverse possession, a claimant must prove by clear and convincing evidence that he or she or a predecessor in interest made use of the property that was actual, open, notorious, exclusive, continuous, and hostile for a 10-year period." *Id.* In addition to the common law elements, Oregon has codified the requirements of adverse possession, which apply to claims that vested after January 1, 1990:

> (1) A person may acquire fee simple title to real property by adverse possession only if:
>
> > (a) The person and the predecessors in interest of the person have maintained actual, open, notorious, exclusive, hostile and continuous possession of the property for a period of 10 years;
> >
> > (b) At the time the person claiming by adverse possession or the person's predecessors in interest, first entered into possession of the property, the person entering into possession had the honest belief that the person was the actual owner of the property and that belief:
> >
> > > (A) By the person and the person's predecessor in interest, continued throughout the vesting period;
> > >
> > > (B) Had an objective basis; and
> > >
> > > (C) Was reasonable under the particular circumstances; and
> >
> > (c) The person proves each of the elements set out in this section by clear and convincing evidence.
>
> (2)(a) A person maintains "hostile possession" property if the possession is under claim of right or with color of title. "Color of title" means the adverse possessor claims under a written conveyance of the property or by operation of law from one claiming under a written conveyance . . .

ORS 105.620.

All of the necessary elements must be proved by clear and convincing evidence. *Case*, 250 Or. App. at 23.  Title acquired via adverse possession is "equal to deeded title." *Evans v. Hogue*, 296 Or. 745, 752 (1984).

### 1.  Actual Use

The Oregon Supreme Court has held that the "requirement of actual use is satisfied if the claimants establish a 'use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suited.'" *Hoffman v. Freeman Land and Timber, LLC*, 329 Or. 554, 560 (1999) (quoting *Allison v. Shepherd*, 285 Or. 447, 452 (1979)).  The Central Point Properties are commercial real estate and FHU leased them to a paying tenant, which is consistent with the use an owner would have put the property to.

### 2.  Open and Notorious

"The claimants' use of the subject property is open and notorious if it is of such a character as to afford the owner the means of knowing it, and of the claim." *Hoffman*, 329 Or. at 560 (internal quotation marks and citation omitted).  Throughout the relevant period, FHU was the only record owner of the properties and has paid the taxes on the Central Point Properties.  This included accepting payments of rent from TRN.  The Court concludes that FHU's possession of the property has been open and notorious.

### 3.  Exclusive

"The requirement of exclusive use is satisfied so long as the use is similar to that which would be expected of an owner in like circumstances." *Hoffman*, 329 Or.

at 560.  Here, FHU rented the premises to TRN and then eventually evicted TRN for failure to pay rent.  The Court concludes that FHU has met the requirement for exclusive use.

### 4. Continuous

"To be continuous, use of a property must be constant and not intermittent," meaning that the claimant "must keep his flag flying and present a hostile front to all adverse pretensions." *Hoffman*, 329 Or. at 560 (internal quotation marks and citation omitted).  Here, FHU did not allow any other party to occupy the property without permission, including TRN which paid rent under a lease and who was evicted from the Central Point Properties for failure to pay.  When FHU learned that Mark Masters had recorded a deed purporting to transfer the Central Point Properties to TRN, FHU promptly sought injunctive relief from this Court, thereby presenting a "hostile front" to an adverse pretension of ownership.  The Court concludes that FHU has established continuous use of the property.

### 5. Hostile

"To establish the requisite hostility, a claimant must demonstrate a subjective intent to possess the property intending to be its owner and not in subordination to the true owner." *Hoffman*, 560 Or. at 561.   Hostility may also be established by "claim of right or with color of title."  ORS 105.620(2)(a).  Here, FHU's conduct in possession of the Central Point Properties was clearly consonant with a subjective intent to possess the property as its true owner.  This is especially true with respect to TRN, which was required to pay rent under a lease for use of the properties and

which was evicted from the properties for non-payment of rent. In addition, the Court notes that FHU acquired the properties by the execution and delivery of deeds from the previous owners of the properties and that FHU asserted a claim to ownership of the Central Point Properties pursuant that claim of right and of title. The Court therefore concludes that FHU has established "hostility" in its claim for adverse possession.

### 6. Honest Belief

As previously, Oregon has added a statutory requirement that the claim of adverse possession arise from an honest belief that the claimant is the true owner of the property. The Court notes that the entire course of dealing between FHU and TRN up to March 2021 was based on an apparent understanding by both parties that FHU was the owner of the Central Point Properties. FHU bought the properties in 1998 and properly recorded a deed on the property. TRN leased the Central Point Properties from FHU and paid FHU rent for the properties. FHU paid all property taxes on the Central Point Properties in that period. When TRN was evicted from the Central Point Properties in 2017 for non-payment of rent, TRN did not challenge the eviction on the basis that TRN was the true owner of the properties. Alan Masters Decl. ¶ 11.

The Court concludes that FHU had an objective basis for believing that it was the true owner of the Central Point Properties and that belief was reasonable under the particular circumstances of this case.

In sum, the Court concludes that FHU has made a clear and convincing showing on each element of its claim for adverse possession and is entitled to summary judgment in its favor.

## III.   Timeliness of the Action on the Promissory Note

TRN moves for summary judgment on FHU's first claim, which seeks to enforce the Promissory Note entered into by TRN and FHU in September 2004, on the grounds that the claim is time-barred.

Oregon law imposes a six-year statute of limitation on actions upon a contract. ORS 12.080.  This limitations period begins to run at the time of the breach of the contract.  *MAT, Inc. v. Am. Tower Asset Sub, LLC*, 312 Or. App. 7, 15 (2021).

TRN contends that, on the face of the pleadings, it breached the terms of the Promissory Note when it ceased to make regular payment on the debt in May 2013. TRN contends that this cause of action accrued in May 2013 and the limitations period ran in June 2019.

However, the terms of the Promissory Note provide that the unpaid balance of the debt was due and payable, together with unpaid interest, on the maturity date of the loan, which was September 2, 2014.  Second Pahl Decl. Ex. A, at 2.  FHU could only make a demand for the entire unpaid balance on that date unless the loan was accelerated following an Event of Default.  While acceleration of the loan was automatic in the case of a declaration of bankruptcy, receivership, or dissolution by TRN, in all other cases, including failure to make regular payments, acceleration was occurred only at the option of FHU.  *Id.* at 5.  To be sure, if FHU had chosen to

accelerate the loan in 2013, the claim would have accrued at that point.  However, TRN has not presented the Court with evidence that FHU chose to accelerate and call the debt due as a result of TRN's failure to make payments after May 2013. Absent acceleration, FHU was not entitled to demand full payment under the Promissory Note until September 2014, which is less than six years before this action was commenced.

TRN asserts that under ORS 12.240, the cause of action on a debt accrues when the last payment is made, but this misreads the statute.  ORS 12.240 provides:

> *Whenever any payment of principal or interest is made after it has become due*, upon an existing contract, whether it is a bill of exchange, promissory note, bond, or other evidence of indebtedness, the limitation shall commence from the time the last payment was made.

ORS 12.240 (emphasis added).

On its face, this statute only applies whenever a payment is made "after it has become due."  Otherwise, the limitation period only commences at the time of breach. Here, there is no evidence that TRN made any tardy payments on the Promissory Note after its last regular payment in May 2013 and so ORS 12.240 does not apply.

Because FHU did not accelerate the debt following TRN's nonpayment, FHU's first claim did not accrue until the maturity date of the Promissory Note in September 2014.  Because this case was filed in August 2020, less than six years after the maturity date of the loan, it is not time-barred.  TRN's motion is DENIED as to FHU's first claim.

## CONCLUSION

For the reasons set forth above, FHU's Motion for Partial Summary Judgment, ECF No. 72 is GRANTED in part and DENIED in part. FHU's Motion for Judicial Notice is GRANTED. TRN's Cross Motion for Partial Summary Judgment, ECF No. 84, is DENIED.

FHU's Motion for Partial Summary Judgment is GRANTED as to FHU's sixth claim for relief. FHU is entitled to a declaration that (1) the Second Amended and Restated Bylaws are valid and displace any prior bylaws or amendments to the bylaws; (2) that since the adoption of the Second Amended and Restated Bylaws on or around March 22, 2019, the legitimate FHU Board of Directors has never included Mark Masters or Michael Lofrano; (3) any and all claims of authority over FHU asserted by Mark Masters in any capacity, including as a board member, an officer, or a founder, are null and void. The Court so declares. TRN's Cross-Motions is DENIED.

FHU's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part as to FHU's fourth claim for relief. FHU is entitled to a declaration that the recording of the 1999 deed purporting to transfer the Central Point Properties to TRN was defective and the Court so declares. The Court declines to grant declaratory judgment on the basis that a claim by TRN for ownership of real property is untimely, as no such claim is before this Court.

The Court GRANTS FHU's Motion for Partial Summary Judgment as to FHU's fifth claim for relief.  To the extent that FHU did not have proper title to the Central Point Properties after 1999, it has reacquired such title by adverse possession.

TRN's Cross-Motion concerning ownership of the Central Point Properties is DENIED.

TRN's Motion for Partial Summary Judgment is DENIED as to FHU's first claim for relief.

It is so ORDERED and DATED this ___23rd___ day of December 2022

/s/Ann Aiken _____

ANN AIKEN

U.S. District Judge
