IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

FOUNDATION OF HUMAN
UNDERSTANDING,

                Plaintiff,

      v.

TALK RADIO NETWORK, INC.,

                Defendant.

_____

Civ. No. 1:20-cv-01652-AA

**OPINION & ORDER**

AIKEN, District Judge

On February 24, 2023, the Court granted a partial final judgment on the claims resolved by the Court's prior ruling on motions for summary judgment. ECF Nos. 113, 114. Defendant Talk Radio Network, Inc. ("TRN") then proceeded with an appeal of that judgment.

On April 5, 2024, the Ninth Circuit determined that it lacked jurisdiction and dismissed the appeal. ECF No. 151. In its memorandum opinion, the Ninth Circuit raised a new issue for this Court to resolve on remand: "Although this action has proceeded thus far under the assumption that the district court has subject matter jurisdiction under 28 U.S.C. § 1332, it appears that the parties may not be completely diverse." *Foundation of Human Understanding v. Talk Radio Network*, Case Nos. 23-35043, 23-35192 (9th Cir. April 5, 2024).

This case was originally filed in Josephine County Circuit Court and removed to this Court by TRN on September 23, 2020. ECF Nos. 1, 2. In its Amended Notice of Removal, TRN asserted that Plaintiff Foundation of Human Understanding ("FHU") was incorporated in California, with its principal place of business in Oregon, while TRN was incorporated in Delaware. ECF No. 2. As the Ninth Circuit summarized:

> The parties believe that they are completely diverse. FHU is a nonprofit organized in California with a principal place of business in Oregon. TRN is a Delaware corporation. TRN contends that it previously had a principal place of business of business in Oregon but that it no longer has a principal place of business there or anywhere else.
>
> It does appear that TRN has ceased its main business operations. But we know of no binding authority setting forth circumstances in which a corporation might have no principal place of business at all, must less circumstances that apply to TRN. Here, the record suggests that TRN may have been engaged in limited activity when this case was filed in state court and removed to federal court. And the record suggests that Mark Masters may have been directing that activity from California. If, at the time the suit was filed and removed, TRN's principal place of business was either in Oregon (where it had been previously) or in California (where Mark Masters may have been at the time), the parties would not be completely diverse and the action would now need to be remanded to state court based on lack of subject matter jurisdiction.

*Foundation of Human Understanding v. Talk Radio Network*, Nos. 23-35043, 23-35192 Mem. Op. 5-6 (9th Cir. April 5, 2023) (internal citations omitted). ECF No. 151.

The Ninth Circuit expressed no view on the answer to that question and invited this Court to engage in relevant factfinding. On April 8, 2024, the Court invited the parties to submit briefing on the question of jurisdiction, fixed a schedule for briefing, and stayed consideration of all pending motions until the issue of jurisdiction had

been settled.   ECF No. 153.  Briefing on the question of jurisdiction closed on May 20, 2024, and the matter is now before the Court.

## I.  Diversity jurisdiction and corporate citizenship generally

The issue raised by the Ninth Circuit implicates this Court's subject matter jurisdiction and that issue can never be forfeited or waived because it involves the Court's power to hear the case.  *United States v. Cotton*, 535 U.S. 625, 630 (2002).  If the Court lacks subject matter jurisdiction the case must, as the Ninth Circuit stated, be remanded back to Oregon state court.

This case was removed to federal court based on an assertion of diversity jurisdiction under 28 U.S.C. § 1332.  Diversity jurisdiction is established when a plaintiff is a citizen of one state, and all defendants are citizens of other states, and the damages are more than $75,000.  *Id.*  This diversity must be "complete," meaning that "each of the plaintiffs must be a citizen of a different state than each of the defendants."  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  Diversity jurisdiction "depends upon the state of things at the time of the action brought."  *Grupo Dataflix v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004).  However, in cases that are removed to federal court, diversity must also exist at the time of removal.  *See Strotek Corp. v. Air Trans. Ass'n of Am.*, 300 F.3d 1129, 1131-32 (9th Cir. 2002) (diversity "must exist when action is removed" (citing *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998)); *see also Foundation of Human Understanding*, Case No. 23-35043, 2335192, at 5 (stating that, in this case, complete diversity must have existed "at the time this suit was filed and removed.").  Once

jurisdiction attaches, a party cannot thereafter, by its own change of citizenship, destroy diversity, nor can the presence of a sham or nominal party defeat removal on diversity grounds. *Strotek Corp.*, 300 F.3d at 1132. However, the removal statute "is strictly construed and any doubt about the right of removal requires resolution in favor of remand," and the defendant "always has the burden of establishing that removal is proper." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (internal quotation marks and citation omitted).

When considering diversity involving corporate parties, a corporation may be deemed a citizen of a state in two ways: First, a corporation "shall be deemed a citizen of every State and foreign state by which it has been incorporated." 28 U.S.C. § 1332(c)(1). Second, a corporation shall also be deemed a citizen of the state where it has its "principal place of business." *Id.*

While identifying the state of incorporation is often a simple matter, it is more complicated to identify the "principal place of business." The Supreme Court has held that the "principal place of business" is "the place where the corporation's high level officers direct, control, and coordinate the corporations activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). This "nerve center" is "typically . . . found at a corporation's headquarters." *Id.* at 81.

Here, it is undisputed that FHU is incorporated in California and has its principal place of business in Oregon and so, for purposes of diversity, is considered a citizen of both California and Oregon. TRN was incorporated in Delaware and historically had its principal place of business in Oregon. TRN asserts, however,

that it ceased operations years before the commencement of this action and that, as a result, it has no principal place of business. As a result, TRN maintains that that it is a citizen of Delaware but not a citizen of Oregon. TRN removed the case to federal court on that understanding. Because FHU is deemed to be citizen of both Oregon and California, if TRN is found to have been a citizen of either of those states at the time of removal, then diversity is destroyed and this Court would be without subject matter jurisdiction to consider this case.

There are two fundamental questions that guide this inquiry. First, the Court must determine if TRN was genuinely inactive when the case was removed to federal court. If TRN was not inactive, then it had a principal place of business that will be determinative of its corporate citizenship. Second, if TRN is inactive, then the Court must determine whether it has corporate citizenship beyond its state of incorporation and, if so, where that citizenship lies.

## II. TRN was an active corporation at the time of removal

In *Co-Efficient Energy Sys. v. CSL Industries, Inc.*, 812 F.2d 556 (9th Cir. 1987), the Ninth Circuit was confronted by a case in which a corporate party claimed to be inactive and so was only a citizen of the state of its incorporation, closely mirroring the arguments advanced by TRN in the present case. The Ninth Circuit determined, however, that it was unnecessary to reach the question of the citizenship of an inactive corporation because the record before it indicated that the corporation in question was active and so had a principal place of business. *Id.* at 558.

In *Co-Efficient Energy*, the Ninth Circuit found that "[s]imply because Co-Efficient is not engaged in traditional business activities in California, e.g., manufacturing goods and supplying services, it does not necessarily follow that Co-Efficient is an inactive corporation and has no principal place of business." *Co-Efficient Energy*, 812 F.2d at 558. The Ninth Circuit noted that Co-Efficient "ha[d] not formally terminated its operations and engaged in winding up procedures," nor had it "permanently abandoned its efforts seeking investment opportunities and tax benefits." *Id.* at 558 n.2.

The threshold of activity for a corporation to be considered active and establish its principal place of business is not high. In *3123 SMB LLC v. Horn*, 880 F.3d 461 (2018), the Ninth Circuit considered the situation of a holding company that engaged "in little activity, so there is little to direct control, or coordinate." *Id.* at 465. The Ninth Circuit was obliged to consider how to classify the citizenship of a company that had no activity other than incorporation and held that "a recently-formed holding company's principal place of business is the place where it has its board meetings, regardless of whether such meetings have already occurred, unless evidence shows that the corporation is directed from elsewhere." *Id.* at 468. Courts were directed to consider the "nerve center" as the "place of actual direction, control, and coordination." *Id.* at 471 (internal quotation marks and citation omitted). And in *Co-Efficient Energy*, the Ninth Circuit determined that the ostensibly inactive company in question was still active because its director and sole shareholder "made business decisions, including the decision to contract with [the defendant] and file

this action," and that the company's principal place of business was where these decisions were made.  812 F.2d at 558.

Here TRN's authorization to do business in Oregon was administratively revoked in June 2016.  Pahl Decl. Ex. 1, at 2.  ECF No. 160.  TRN's corporate charter in Delaware had also become "inoperative and void for nonpayment of taxes and/or failure to file a complete annual report" in March 2014.  Pahl Decl. Ex. 3, at 2.  After being served with the state court complaint, Mark Masters, on behalf of TRN, "consulted with legal counsel and a former officer of TRN," and, on the advice of counsel, sought to renew TRN's corporate charter.  Mark Masters Decl. ¶ 4.  ECF No. 158.

On September 17, 2020, Delaware granted a Certificate for Revival of Charter for TRN, which was signed by Mark Masters as president of TRN.  Pahl Decl. Ex. 3. The revival of charger listed National Registered Agents, Inc. as TRN's registered agent for service of process.  *Id.*  On September 18, 2020, TRN registered to conduct business in Oregon with the Oregon Secretary of State.  Pahl Decl. Ex. 4.  The new Oregon registration listed a corporate agent in Salem, Oregon and gave a mailing address for the corporation in Grants Pass, Oregon.  *Id.* Mark Masters was listed as the president and secretary of TRN, with the same address in Grants Pass, Oregon. *Id.*  The authorization listed the physical address of TRN as being in Central Point, Oregon.  *Id.*  The application for authorization was signed by Mark Masters, as president of TRN, who affirmed "under penalty of perjury," that the information

contained in the document was, to the best of his knowledge and belief, "true, correct, and complete." *Id.* at 4.

TRN removed the case to federal court five days after filing the new registration with the Oregon Secretary of State and asserted that the sole basis for jurisdiction was diversity because it was a citizen of Delaware.

The Court concludes that Mark Master's consultation with legal counsel on behalf of TRN; his revival of TRN's corporate charter in Delaware; his registration of TRN with the Oregon Secretary of State; and the retention of agents for service were corporate acts and business decisions, analogous to the act of incorporation in *3123 SMB LLC*, and that the evidence indicates that these actions were done in Oregon by Mark Masters as the principal, and perhaps only, officer of TRN.  In particular, the Court notes that TRN's registration with the Oregon Secretary of State listed a mailing address for TRN in Grants Pass, Oregon and a physical location in Central Point, Oregon both of which were made by Mark Masters under penalty of perjury and which are inconsistent the representations made in the Amended Notice of Removal.  The decision to remove the case to federal court is also evidence of corporate activity, analogous to the litigation decisions made by the corporation in *Co-Efficient Energy*.  The Court concludes that, although TRN was not engaged in its prior business of broadcasting, it was active at the time of removal and that the evidence shows that its principal place of business, the place of actual direction, control, and coordination at the time of removal, was in Oregon.  Because the Court concludes that TRN was active at the time of removal and had a principal place of business in

Oregon, it is not necessary for the Court to reach the issue of the competing tests for citizenship of inactive corporations.

As FHU's principal place of business is also in Oregon, the Court concludes that the parties were not diverse at the time of removal. As a result, the Court concludes that it lacks subject matter jurisdiction over this action and this case must, therefore be remanded to the Circuit Court for the State of Oregon for Josephine County.

It is so ORDERED and DATED this ___2nd___ day of July 2024.

_/s/Ann Aiken_____
ANN AIKEN
U.S. District Judge